Lynwood C. TAYLOR, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 103, 2008.

Supreme Court of Delaware.

Submitted: Nov. 12, 2008.
Decided: Dec. 24, 2008.
Reargument Denied Jan. 20, 2009.

Bruce A. Rogers, Esquire, Georgetown, Delaware; for Appellant.

Abby Adams, Esquire, Department of Justice, Georgetown, Delaware; for Appellee.

Before BERGER, JACOBS and RIDGELY, Justices.

JACOBS, Justice.

Lynwood C. Taylor, the defendant below, appeals from Superior Court convictions of Rape in the First Degree, Continuous Sexual Abuse of a Child, and Endangering the Welfare of a Child.[1] Taylor raises two arguments on appeal. First, he claims that the Superior Court's improper admission into evidence of one of the victim's journals on the first day of trial deprived him of the ability to prepare an effective defense. Second, Taylor claims that the jury verdict was based on insufficient evidence. We find no merit to Taylor's arguments and affirm.

### FACTS

The victim, who was Taylor's daughter, was born on June 7, 1988. In 1999, Taylor and the victim's mother divorced when the victim was in the sixth grade. The victim continued to live with Taylor in Georgetown, Delaware until October 2003. At the trial she testified that during that period Taylor raped her repeatedly, often several times a year.

On April 3, 2007, the Delaware State Police arrested Taylor, who was later charged with six counts of Rape in the First Degree, one count of Continuous

---

1. Taylor was convicted of six counts of Rape in the First Degree, one count of Continuous Sexual Abuse of a Child, and one count of Endangering the Welfare of a Child.

Sexual Abuse of a Child, one court of Endangering the Welfare of a Child and one count of Terroristic Threatening. Thereafter, the victim was interviewed by authorities, twice by the Children's Advocacy Center ("CAC") and once by the police.

Trial was originally scheduled for September 11, 2007, but was continued at the State's request to enable it to retain an expert witness. Trial was rescheduled to November 7, 2007, and later, was finally set for December 12, 2007.

The victim kept two journals. One was a personal journal (the "first journal"); the other was a notebook that she and her then-boyfriend passed back and forth to one another (the "second journal"). The second journal contained entries with corroborating facts related to three of the rapes. In March 2007, when the investigating detective asked the victim if she had any journals or similar items, she turned over only the first journal. The victim did not initially reveal the second journal, because she wanted to keep it private. She did not turn over the second journal until the eve of trial, when she met with the prosecutor. It was not until the December 11, 2007 pre-trial conference that the defense was first informed of the existence of the second journal (totaling 128 pages).

Taylor requested a continuance of the trial to afford him time to read and digest the newly disclosed second journal, to prepare for trial and to evaluate the effect of that document on trial strategy, plea offers, and the defense's case-in-chief. Although the Superior Court did not change the trial date, it postponed the State's case-in-chief until the next morning. That postponement gave Taylor one day to review the journal and prepare to respond to the State's case-in-chief. Jury selection and opening statements began later that day.

The next morning, after having reviewed the second journal, Taylor moved to suppress it, but did not renew his motion for a continuance. The Superior Court denied the motion to suppress and the trial continued for four days, with both the victim and Taylor testifying. Repeated reference was made to the second journal. At the conclusion of the trial, the jury convicted Taylor on all charges, except the Terroristic Threatening charge, which had been previously dismissed. Taylor was sentenced on February 15, 2008. This appeal followed.

## ANALYSIS

### I. Admission of the Second Journal

■ Taylor contends that the disclosure of the victim's second journal on the first day of trial, and the Superior Court's refusal to continue the matter to permit the defense to evaluate properly and prepare for the late-disclosed evidence, constituted legal error, an abuse of discretion, and a deprivation of his substantial rights. It is unclear whether Taylor's appeal addresses the Superior Court's decision on his motion to suppress or its refusal to grant his motion for a continuance. Ultimately the distinction is irrelevant, because neither ruling establishes grounds for reversal.

■ We review a Superior Court's decision adjudicating discovery violations for abuse of discretion.[2] We review claims not properly raised below for plain error.[3] An error is plain where it is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the judicial

2. *Ortiz v. State*, 869 A.2d 285, 294 (Del.2004); *Secrest v. State*, 679 A.2d 58, 63 (Del.1996).

3. *Chance v. State*, 685 A.2d 351, 354 (Del. 1996).

process."[4] Put simply, "a plain error is an obvious error that affects substantial rights."[5] After asking for and receiving time to review the journal overnight, Taylor moved to suppress the second journal, but did not renew his motion for a continuance. Therefore, to the extent that Taylor's argument on appeal addresses the (denied) motion to suppress the diary, we review for an abuse of discretion. To the extent that Taylor challenges the denial of his motion for a continuance, because that challenge was not properly raised at trial, we review only for plain error.

In *Secrest v. State,* this Court held that "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."[6] After reviewing the analytical approaches in other jurisdictions, we offered the following guidance:

> First, the party seeking the continuance has the burden of establishing a clear record of the relevant facts relating to the criteria for a continuance, including the length of the requested continuance. Second, the party seeking the continuance must show:
>
> (a) that it was diligent in preparing for the presentation of the testimony;
>
> (b) that the continuance will be likely to satisfy the need to present the testimony; and
>
> (c) that the inconvenience to the Court, opposing parties, witnesses and

jurors is insubstantial in relation to the likely prejudice which would result from the denial of the continuance.[7]

Taylor claims that his rights were dramatically and adversely affected by the late disclosure of the second journal. That journal, he contends, contained date references, inconsistencies in the victim's version of events, identification of potential witnesses, and detailed explanations of events previously unknown to the defense. As a result, Taylor argues, the belated disclosure of the second journal deprived him of the ability to prepare a proper defense. More specifically, Taylor claims that he was unable to have the second journal evaluated by an expert, to retain an expert to testify about certain comments made by the victim, to prepare to address problems concerning the veracity and reliability of that journal and the witnesses, and to prepare meaningfully to cross-examine the witnesses including the victim. Taylor also claims that the second journal, which played an integral role in the State's case-in-chief, drastically altered the defense's strategy, which focused on the victim's inconsistent and incomplete interviews, her widely divergent accounts of what happened and her inability to provide clear dates of when the rapes occurred. In addition, Taylor contends that the State was not surprised to learn of the second journal on the eve of trial, because in fact the State had known of its existence as early as March 2007, when the Delaware State Police interviewed the victim.

Apart from conclusorily summarizing how the admission of the second journal prejudiced him, Taylor has not articulated

---

**4.** *Wainwright v. State,* 504 A.2d 1096, 1100 (Del.1986), *cert. denied* 479 U.S. 869, 107 S.Ct. 236, 93 L.Ed.2d 161 (1986) (citing *Dutton v. State,* 452 A.2d 127, 146 (Del.1982)).

**5.** *Johnson v. State,* 878 A.2d 422, 429 (Del. 2005).

**6.** 679 A.2d at 64 (quoting *Riley v. State,* 496 A.2d 997, 1018 n. 27 (Del.1985)).

**7.** *Secrest,* 679 A.2d at 66.

on what basis the admission of that journal constituted a discovery violation. Given Taylor's reference to the outstanding discovery request and his effort to show that the State knew of the second journal as early as March 2007, it appears that Taylor is claiming a violation of Superior Court Criminal Rule 16(a)(1)(C).

■ Rule 16(a)(1)(C) states that "[u]pon request of the defendant the state shall permit the defendant to inspect and copy or photograph books, papers [and] documents ... which are within the possession, custody or control of the state, and which are material to the preparation of the defendant's defense or are intended for use by the state as evidence in chief at the trial...."[8] Superior Court Criminal Rule 16(d)(2) provides four remedies where a discovery rule is violated. The Court may: (i) order prompt compliance with the discovery rule; (ii) grant a continuance; (iii) prohibit the party from introducing in evidence material not previously disclosed; or (iv) issue such other order that the Court deems just under the circumstances.[9] "In determining the question of whether sanctions should be imposed, the trial court should weigh all relevant factors, such as the reason for the State's delay and the extent of prejudice to the defendant."[10]

Taylor has presented no evidence that the State knew of the second journal before Sunday, December 10, 2007. Although Taylor makes a vague reference to a March 25, 2007 police report in which the investigating detective wrote that the victim "also turned her *journals* over to me she wrote during the incidents [sic],"[11] that reference is insufficient to support Taylor's assertion that the State had prior knowledge of the second journal. The only reason for the delay that the record does support, is that the victim did not turn the second journal over to the State until the eve of trial.

Taylor contends that the late disclosure of the second journal prejudiced his substantial rights. Specifically, Taylor asserts that the second journal: (a) references allegations of other sexual misconduct; (b) includes both more specific and inconsistent information regarding the victim's statements; and (c) identifies potential additional witnesses that he might have been able to call. Taylor also claims that because of the late discovery, he lacked sufficient time to: (d) prepare to cross-examine witnesses on the contents of the journal; (e) have the second journal evaluated by an expert; and (f) consider any outstanding plea offers.

Taylor's first three claims are unsupported by the record. First, Taylor claims that the second journal references other allegations of sexual misconduct, but he is unable to locate any support for that claim in the second journal. The reference to an alleged prior rape when the victim was six or seven years old came from the first journal, not the second. The one event referenced solely in the second journal is the victim's statement that she cut herself with a knife. That, however, is not sexual conduct and, thus, was irrelevant to the charges against Taylor.

Second, as for Taylor's claim that the second journal contained more specific information about the timing and context of

---

**8.** Del.Super. Ct.Crim. R. 16(d)(2).

**9.** Del.Super. Ct.Crim. R. 16(d)(2).

**10.** *Snowden v. State,* 677 A.2d 33, 39 (Del. 1996) (citing *Doran v. State,* 606 A.2d 743, 745 n. 3 (Del.1992)).

**11.** The first journal was turned over at this time. It appears that the use of the term "journals" was merely an errant pluralization in the notes of the investigating detective.

the rapes, Taylor is unable to substantiate his claims with a specific journal entry. In fact, the second journal does not provide specific details of the rapes. It states only what was going through the victim's mind at the time.

Third, Taylor is unable to point to anything in the second journal that would support the need to call a witness who was not otherwise called. For example, although the second journal indicates that the victim told her friend Maria about the rapes, that entry does not support Taylor's claim of prejudice, because Maria testified at trial.

Taylor's last three claims are that he may have benefited from having extra time to prepare for cross-examination of witnesses, hiring experts, and considering his plea offers. But Taylor fails to show how these harms were of such magnitude that they prejudiced a substantial right. In *Secrest* we noted that "defendant[s] must show 'more than a whimsical hope that more time to investigate might produce additional exculpatory evidence.'"[12] Because there were no outstanding plea offers, Taylor was not prejudiced in that regard. Nor does he identify what type of expert he may have hired had he been given more time to review the second journal. And, he does not point to any particular passage in that journal on which an expert could have testified to support his defense.

The only colorable claim of significant prejudice is that Taylor lost time to prepare for the cross-examination of witnesses. It is undisputed, however, that Taylor was given two hours at lunch, plus the interval between the 2:30 p.m. recess until trial the next morning to review the second journal. That was sufficient time in which to review the journal and determine whether a continuance was needed in order to conduct further trial preparation. But, Taylor did not renew his motion for a continuance the next day, nor did he point to specific portions of the diary that should be excluded. Instead, he moved (unsuccessfully) to exclude the second journal *in toto*.

Given the lack of factual support for any claimed discovery violation, the Superior Court did not abuse its discretion in denying Taylor's motion to suppress. Moreover, Taylor has not established a "clear record" of the relevant facts relating to the need for a continuance. Therefore, the Superior Court did not commit plain error by denying a continuance.

## II. Sufficiency of the Evidence

■ Finally, Taylor claims that the jury verdict was based on insufficient evidence and that based on the evidence of record, no rational trier of fact could have found the essential elements of the crimes charged beyond a reasonable doubt. In reviewing the sufficiency of evidence, we determine "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find [a] defendant guilty beyond a reasonable doubt."[13]

To prove Rape in the First Degree, the State had to show that: (i) Taylor intentionally engaged in sexual intercourse with the victim, (ii) that the victim was under 16 years of age at the time, and (iii) that he stood in a position of trust, authority or supervision over the victim.[14] To prove Endangering the Welfare of a Child, the

12. *See Secrest v. State,* 679 A.2d 58, 66 (Del. 1996) (quoting *State v. Chambers,* 624 A.2d 473, 474 (Me.1993)).

13. *Farmer v. State,* 844 A.2d 297, 300 (Del. 2004) (citing *Monroe v. State,* 652 A.2d 560, 565 (Del.1995)).

14. 11 *Del. C.* § 773(a)(6).

State had to show that: (i) Taylor was the victim's father who (ii) assumed responsibility for her when she was under 18, and (iii) knowingly acted in a manner likely to injure her physical, mental, or moral welfare.[15] To prove Continuous Sexual Abuse of a Child, the State had to show that: (i) Taylor resided with or had continuing access to the victim, (ii) intentionally engaged in three or more acts of sexual conduct with her while (iii) she was under age 14, and that (iv) those acts occurred over a period of three or more months.[16]

 "It is well established that a victim's testimony alone, concerning alleged sexual contact, is sufficient to support a guilty verdict if it establishes every element of the offense charged."[17] Taylor claims that because the victim could not testify as to the precise dates of the rapes, the State could not prove all of the essential elements of the crimes with which he was charged. In *Bartholomew v. State,* we held that generic testimony about the nature of sexual acts, without a precise date, time or place may be sufficient to support charges of child molestation if the testimony describes the kind and number of the acts with sufficient specificity and provides a general time frame.[18] *Bartholomew* controls here. In this case, not only was the victim able to describe the rapes, but also she was able to testify that she was first raped while she was in the seventh or eighth grade, that she was raped every few months thereafter, and that altogether she was raped about five times. This evidence was presented through the victim's testimony at trial, and was corroborated by the second journal and the CAC and police interviews.

The victim's testimony about her age, the nature of the sexual conduct, and her relationship to Taylor establishes all the elements of Rape and Endangering the Welfare of a Child. Given the victim's testimony as to the time of the first rape (the Fall of 2000) and the frequency of the rapes (every couple of months), there is sufficient evidence to establish that three or more sexual acts occurred before the victim turned 14. That evidence established the additional facts necessary to prove Continuous Sexual Abuse of a Child. In short, reviewing the evidence in the light most favorable to the prosecution, a rational tier of fact could easily find that the evidence supported the essential elements of each offense charged.

## CONCLUSION

The judgments of the Superior Court are affirmed.

15. 11 *Del. C.* § 1102(a)(1).

16. 11 *Del. C.* § 778(a). The statute was amended effective July 10, 2006, to raise the age of the victim to 18. 75 Del. Laws, c. 392.

17. *Farmer,* 844 A.2d at 300 (citing *Hardin v. State,* 840 A.2d 1217, 1224 (Del.2003)).

18. *Bartholomew v. State,* 2007 WL 1476456, at *2 (Del. May 22, 2007) (citing *California v. Jones,* 51 Cal.3d 294, 270 Cal.Rptr. 611, 792 P.2d 643, 655 (1990)).