Tyrell OLIVER, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 196, 2011.

Supreme Court of Delaware.

Submitted: Nov. 19, 2012.
Decided: Feb. 4, 2013.

Michael R. Abram, Law Office of· Michael R. Abram, Georgetown, Delaware for appellant.

Abby Adams and Sean P. Lugg (argued), Department of Justice, Georgetown, Delaware for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices constituting the Court en Banc.

STEELE, Chief Justice.

In this appeal, we consider whether a Superior Court judge abused his discretion when he granted defense counsel an overnight continuance to review an additional set of laboratory reports the State's chemist produced while testifying on cross examination. We agree with the Superior Court judge's ruling that the State failed to comply with Superior Court Criminal Rule 16. However, we hold the trial judge abused his discretion by granting defense counsel a continuance for less than 24 hours to review the highly technical data in the reports. Accordingly, we reverse.

## I. FACTUAL AND PROCEDURAL HISTORY

On July 15, 2010, the Delaware State Police arrested Defendant–Appellant Tyrell Oliver. The State charged Oliver with two counts of Possession With Intent to Deliver Cocaine, two counts of Possession of Drug Paraphernalia, and various other drug-related charges.[1] On November 18, Oliver filed a discovery request. As part of that filing, Oliver requested any evi-

---

**1.** The State also charged Oliver with one count each of Maintaining a Vehicle for Keeping Controlled Substances, Maintaining a Dwelling for Keeping Controlled Substances, Possession of Marijuana, Conspiracy in the Second Degree, Possession With Intent to Deliver Oxycodone, and Promoting Prison Contraband. The Superior Court ultimately granted Oliver's motion to sever the prison contraband and oxycodone charges.

dence that the State might present at trial under Rules 702, 703, or 705 of the Delaware Uniform Rules of Evidence, as well as a copy of any written report (including all preliminary notes made by the examiner) of any scientific examination conducted in connection with the case.

Oliver's trial began on February 14, 2011. As part of its case-in-chief, the State called Irshad Bajwa, a state forensic chemist who tested the substances the police seized from Oliver. Bajwa prepared a Final Report, which the State entered into evidence, identifying at least one of the substances as cocaine. During cross examination, Oliver's counsel asked what Bajwa did with his notes after he compared them with his Final Report. Bajwa testified that he attached his notes to the Final Report in his case file, and handed Oliver his copy of the notes. The State had failed to produce these notes in response to Oliver's discovery request. The trial judge granted a recess for Oliver to review the notes. Bajwa's "notes" included a series of laboratory reports that revealed the underlying data and showed how Bajwa reached his conclusion that one of the substances was indeed cocaine. The notes also indicated that Bajwa relied in part on another technician's analysis of the tested substances to reach his conclusions. In contrast, the Final Report was merely a summary report describing Bajwa's conclusions.

2. The trial judge *sua sponte* proposed and gave the following jury instruction:
 A forensic chemist from the Medical Examiner's office testified. He testified about the results of certain tests. As to these tests, you must be satisfied that the samples tested came from material taken from the defendant on or about July 15, 2010, and that the devices used in the Medical Examiner's Office were in good working order and were properly operated by qualified individuals.

The State admitted at trial that Bajwa's notes fell within Oliver's discovery request. The Superior Court judge ruled that the State had committed a discovery violation. The judge denied Oliver's motion to dismiss and instead recessed the trial from 4:25 p.m. until 10:00 a.m. the next morning to give Oliver time to review Bajwa's notes. The trial judge also added a jury instruction discussing Bajwa's testimony.[2] On February 15, 2011, a jury found Oliver guilty on all remaining counts.[3] The judge sentenced Oliver on March 25, 2011.

Oliver appeals on two grounds: (1) the Superior Court judge erred in admitting the test results over Oliver's objection because the State failed to properly establish a chain of custody and violated Oliver's confrontation rights; and (2) the Superior Court judge abused his discretion in crafting a remedy for the State's violation of Superior Court Criminal Rule 16. Because we find reversible error on the second ground, we do not address Oliver's first ground for appeal.

## II. STANDARD OF REVIEW

We review a trial judge's application of the Superior Court Rules relating to discovery for an abuse of discretion.[4]

## III. ANALYSIS

Superior Court Criminal Rule 16(a)(1)(D) describes the discovery requirements for scientific test results:

*State v. Oliver*, Cr. ID No. 1007013509A, at B–70, B–138 to B–139 (Del.Super. Feb. 15, 2011) (TRANSCRIPT).

3. After the State presented its case, Oliver moved for, and the Superior Court judge granted, judgment of acquittal on the Possession of Marijuana charge.

4. *Hopkins v. State*, 893 A.2d 922, 927 n. 5 (Del.2006) (citation omitted).

Upon request of a defendant the state shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody, or control of the state, the existence of which is known, or by the exercise of due diligence may become known, to the state, and which are material to the preparation of the defense or are intended for use by the state as evidence in chief at the trial.[5]

Superior Court Criminal Rule 16(a)(1)(E) addresses discovery requests concerning expert opinions:

Upon request of a defendant, the state shall disclose to the defendant any evidence which the state may present at trial under Rules 702, 703, or 705 of the Delaware Uniform Rules of Evidence. This disclosure shall be in the form of a written response that includes the identity of the witness and the substance of the opinions to be expressed.[6]

In response to the Superior Court judge's questions, the State conceded that Bajwa's "notes" were something Oliver had requested, and "probably something [the State] should have turned over to [him]."[7] The Superior Court judge then determined "the discovery violation [was] conceded by the State."[8] We agree that the State conceded the violation, and on appeal the State makes no serious attempt to dispute that a violation occurred.[9] Instead, the State argues that the Superior Court judge did not abuse his discretion when crafting his remedy.[10]

■■■■ Once a trial judge determines that sanctions should be imposed, he "should weigh all relevant factors, such as the reasons for the State's delay and the extent of prejudice to the defendant."[11] A trial judge has broad discretion to fashion an appropriate sanction for a discovery violation.[12] We noted in *Brown v. State* that where a violation occurs, "Superior Court Criminal Rule 16 sets forth four alternative sanctions: 1) order prompt compliance with the discovery rule; 2) grant a continuance; 3) prohibit the party from introducing in evidence material not disclosed; or 4) such other order the Court deems just under the circumstances."[13] When we review an alleged discovery violation, we apply a three-part test analyzing: "(1) the centrality of the error to the case; (2) the closeness of the case; and (3) the steps taken to mitigate the results of

---

**5.** Super. Ct.Crim. R. 16(a)(1)(D).

**6.** Super. Ct.Crim. R. 16(a)(1)(E).

**7.** *State v. Oliver*, Cr. ID No. 1007013509A, at A–154 (Del.Super. Feb. 14, 2011) (TRANSCRIPT).

**8.** *Id.* at A–156.

**9.** *See* Answering Br. 21 ("The State admitted that the notes fell within defense counsel's discovery request, while not expressly admitting it was a discovery violation. The Superior Court found that the State conceded a discovery violation; however, any prejudice was 'more hypothetical than real.' " (citations

omitted)); *id.* at 24 n. 39 (briefly commenting that it was "arguable that there was no violation").

**10.** *Id.* at 21.

**11.** *Snowden v. State*, 677 A.2d 33, 39 (Del. 1996) (citing *Doran v. State*, 606 A.2d 743, 745 n. 3 (Del.1992)).

**12.** *Hopkins v. State*, 893 A.2d 922, 927 (Del. 2006) (quoting *Cabrera v. State*, 840 A.2d 1256, 1263 (Del.2004)).

**13.** *Brown v. State*, 897 A.2d 748, 752 (Del. 2006) (quoting *Doran*, 606 A.2d at 745) (internal quotation marks omitted).

the error."[14] We "will reverse only 'if substantial rights of the accused are prejudicially affected.' "[15]

In determining whether sanctions are appropriate, the trial judge should consider the reason for the State's delay in producing the documents.[16] The State was unaware of Bajwa's "notes" until Oliver asked about them during cross examination.[17] However, the State has a duty to inform itself of available discoverable evidence.[18] As State's counsel admitted at trial, in the future he will need to discuss the existence of these types of notes with his Office and the Medical Examiner's Office, because "when you are talking about scientific testimony, data is probably something[—]notes that go into the testing [are] probably something that [defendants] need to take a look at prior to trial so that they can obtain their own expert."[19] The State's lack of diligence is particularly troubling in light of Oliver's claim that "the Medical Examiner's Officer had ... repeatedly denied the existence of this [type of] report in defense counsel's prior dealings with the State and Medical Examiner's office."[20]

Concerning the prejudice to the defendant, the State argues the trial judge's remedy was sufficient to cure any prejudice to Oliver.[21] The State cites *Zdina v. State*[22] and *Taylor v. State*[23] to argue that because Oliver did not request an additional continuance after reviewing Bajwa's notes overnight, Oliver tacitly conceded that he had sufficient time to review the notes.[24] In *Zdina,* which involved a Superior Court Criminal Rule 26.2 discovery violation, the defendant claimed unfair prejudice where during cross examination the police officer revealed that he had made handwritten notes about witness interviews during the investigation.[25] We held that the error was harmless, in part because defense counsel, after reviewing the notes during the officer's cross examination, made no request for a recess or continuance, which meant "[p]resumably, therefore, [defense counsel] had sufficient time to review and utilize the notes during his cross-examination."[26]

In *Taylor,* a rape victim turned over a second journal that contained corroborating facts on the eve of trial, and the State informed the defense about the 128–page journal at the pretrial conference.[27] Defense counsel moved for a continuance to

14. *Hopkins,* 893 A.2d at 927 (citing *Ray v. State,* 587 A.2d 439, 441 (Del.1991)).

15. *Fuller v. State,* 922 A.2d 415, 2007 WL 812752, at *2 (Del. Mar. 19, 2007) (ORDER) (quoting *Hopkins,* 893 A.2d at 926).

16. *Snowden,* 677 A.2d at 39 (citing *Doran,* 606 A.2d at 745 n. 3).

17. Answering Br. 23–24.

18. *Doran,* 606 A.2d at 745 (citing *Skinner v. State,* 575 A.2d 1108, 1126 (Del.1990); *Johnson v. State,* 550 A.2d 903, 911 n. 6 (Del. 1988)).

19. *State v. Oliver,* Cr. ID No. 1007013509A, at A–154 (Del.Super.Feb.14, 2011) (TRANSCRIPT).

20. Opening Br. 27.

21. Answering Br. 24.

22. 694 A.2d 845, 1997 WL 328593 (Del. May 23, 1997) (ORDER).

23. 982 A.2d 279 (Del.2008).

24. *See* Answering Br. 25–26 (citations omitted).

25. *Zdina,* 1997 WL 328593, at *2.

26. *Id.* (citation omitted).

27. *Taylor,* 982 A.2d at 281.

enable him to "read and digest the newly disclosed second journal, to prepare for trial and to evaluate the effect of that document on trial strategy, plea offers, and the defense's case-in-chief."[28] The trial judge postponed the State's case-in-chief until the next morning; the parties went ahead with jury selection and opening statements that day.[29] The following morning, defense counsel moved to suppress the second journal but did not renew his motion for a continuance. The judge denied the motion and trial commenced.[30] In affirming, we commented that defense counsel failed to "identify what type of expert he may have hired had he been given time to review the second journal," and we also noted that defense counsel failed to "point to any particular passage in that journal on which an expert could have testified to support his defense."[31] We found that the "only colorable claim of significant prejudice [was] that [defense counsel] lost time to prepare for the cross-examination of witnesses."[32] However, we held that "two hours at lunch, plus the interval between the 2:30 p.m. recess until trial the next morning ... was sufficient time to determine whether a continuance was needed in order to conduct further trial preparation."[33] Defense counsel "did not renew his motion for a continuance the next day," but rather "moved (unsuccessfully) to exclude the second journal *in toto*."[34]

We draw a narrow factual distinction between *Zdina* and *Taylor* and the facts of this case. The material giving rise to the discovery violations in *Zdina* and *Taylor*, a police officer's notes and a victim's journal respectively, were qualitatively very different from the contents of Bajwa's "notes." As Oliver argues on appeal, Bajwa's "notes were written by an expert in forensic chemistry while conducting laboratory testing of the chemical composition of substances."[35] We agree that while a layperson could interpret a police officer's notes and a victim's journal in a brief amount of time, "a person without a background in forensic chemistry that reads a lab report of a chemical analysis is unable to comprehend that information on the same level," and "a scientific review of Mr. Bajwa's forensic lab report requires more ... than an evening" to comprehend.[36]

We draw a further distinction between *Taylor* and this case: Oliver specifically identifies how the State's discovery violation created prejudice. Had the State timely produced Bajwa's notes, Oliver would have been aware that an additional chemist was involved in the testing process. Oliver could have investigated that chemist's actions and reputation. In direct contrast to *Taylor*, Oliver also identified what kind of expert he might have hired and the data on which the expert might have opined. When discussing the differences between the Final Report and Bajwa's notes as a basis for why he needed more time, Oliver's counsel stated:

> The only way to know if [the Final Report] is accurate and if it's been done properly and that would probably not be by me because I am not a forensic chemist would be that somebody can look at

28. *Id.*

29. *Id.*

30. *Id.*

31. *Id.* at 284.

32. *Id.*

33. *Id.*

34. *Id.*

35. Reply Br. 14.

36. *Id.* at 15.

[the underlying reports] and [the report containing the underlying data] basically shows what the gas chromatography does. It shows the actual results where the spikes are, and somebody could actually look at [the data] and go: Yes, I agree that is cocaine, or no, that is the wrong spot for cocaine. It's impossible to do it with [the Final Report]. There is just no way, but with [the underlying report containing the data], which does exist because I have it in my hand, you can do it.[37]

The trial judge, however, denied Oliver's motion to dismiss and instead granted a recess from 4:25 p.m. until 10:00 a.m. the next morning.[38] The trial judge determined that instead of granting a longer continuance or dismissing the case so that Oliver could consult a forensic expert, Oliver's overnight review "would be sufficient for the purpose" of resolving any prejudice.[39] "In Secrest we noted that defendant[s] must show more than a whimsical hope that more time to investigate might produce additional exculpatory evidence."[40] Here, however, given the highly technical nature of Bajwa's notes, we hold that less than 24 hours was insufficient time for Oliver to prepare for cross examination or consult with a forensic expert. Here, in contrast to Taylor, Oliver raised a colorable claim of significant prejudice concerning lost time to prepare for cross examination. The judge's *sua sponte* jury instruction[41] did not cure that prejudice.

The State argues that the case was not close and the error was not central to the case, because the State entered into evidence portions of Oliver's police interview during which Oliver strongly implied he smoked and occasionally sold crack cocaine.[42] The State also quotes the trial judge's comment that any prejudice " 'was more hypothetical than real,' "[43] pointing out that Oliver has failed to note any inconsistencies between Bajwa's notes and the Final Report.[44]

 In order to convict Oliver of Possession With Intent to Deliver Cocaine, the State had to prove beyond a reasonable doubt that Oliver possessed cocaine. Because the laboratory data at issue goes directly to that conclusion, we hold that the discovery violation was central to the case. While a "Rule 16 violation does not require reversal if significant evidence, independent of the [evidence giving rise to the discovery violation], was before the jury,"[45] Oliver's tacit admissions during his police interview that he smokes and occasionally sells cocaine fail to establish

---

37. *State v. Oliver*, Cr. ID No. 1007013509A, at A–147 (Del.Super.Feb.14, 2011) (TRANSCRIPT).

38. *Id.* at A–158. The State argues that defense counsel should have requested an additional continuance the next morning. Answering Br. 24. However, we find that the trial judge had already ruled on Oliver's counsel's request for time to have an expert review the data underlying Bajwa's report when he denied the motion to dismiss and instead granted an overnight continuance.

39. *Oliver*, Cr. ID No. 1007013509A, at A–156.

40. *Taylor v. State*, 982 A.2d 279, 284 (Del. 2008) (alteration in original) (quoting *Secrest v. State*, 679 A.2d 58, 66 (Del.1996)) (internal quotation marks omitted).

41. *See supra* note 2.

42. Answering Br. 26–27.

43. *Id.* at 27.

44. *Id.* at 24.

45. *Fuller v. State*, 922 A.2d 415, 2007 WL 812752, at *3 (Del. Mar. 19, 2007) (ORDER) (quoting *Secrest v. State*, 679 A.2d 58, 64 n. 9 (Del.1996)) (internal quotation marks omitted).

the significant, independent evidence required to make the discovery violations harmless.

We hold the trial judge abused his discretion by granting a continuance of less than 24 hours for Oliver to review technical laboratory test data. The trial judge insufficiently attempted to mitigate the substantial prejudice caused by the State's discovery violation.

## IV. CONCLUSION

We therefore **REVERSE** the judgment of the Superior Court and **REMAND** for proceedings consistent with this opinion.