# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE      )
                             )
                             )
                             )
      v.                  )   ID No. 2110001942
                             )
KATHLEEN MCGUINESS      )
                             )
      Defendants.       )
                             )
                             )

Submitted: May 4, 2022
Decided: May 18, 2022

**Defendant's Motion to Dismiss Indictment or Alternatively Sanction the State for Discovery Violations – GRANTED in part and DENIED in part**

## MEMORANDUM OPINION

Mark A. Denney, Jr., Esquire, Department of Justice, 820 North French Street, 7th Floor, Wilmington, Delaware 19801. Attorney for State of Delaware.

Steven P. Wood, Esquire and Chelsea A. Botsch, Esquire, McCarter & English, LLP, Renaissance Centre, 405 North King Street, 8th Floor, Wilmington, Delaware 19801. Attorneys for Defendant.

**CARPENTER, J.**

Before the Court is Defendant Kathleen McGuiness's ("Defendant" or "McGuiness") Motion to Dismiss the Indictment or Alternatively Sanction the State for Discovery Violations pursuant to Delaware Superior Court Rules of Criminal Procedure 7(c), 16(d)(2), and 48(b).[1]  For the reasons set forth in this Opinion, Defendant's Motion is **GRANTED in part** and **DENIED in part**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On September 29, 2021, personnel from the Delaware Department of Justice ("DOJ") executed a search warrant at the Defendant's office in Dover, Delaware.[2] Three laptops, five USB thumb drives, and one storage disk were seized during the execution of the search warrant.[3]  One laptop belonged to the Defendant, and another belonged to the Defendant's daughter.[4]

After the execution of that search warrant, the evidence collected was maintained by the Delaware State Police High Tech Crimes Unit ("HTCU").[5]  On October 12 and 13, 2021, several days after the Defendant was indicted by the Grand Jury, hard drives were removed from the seized laptops and, at that time, it was discovered that

---

[1] Def.'s Mot. to Dismiss Indict. or Alt. Sanction the State for Discovery Violations, D.I. 73, p. 1 (Apr. 22, 2022)(hereinafter "Def.'s Mot.").
[2] *Id*. at p. 2.
[3] *Id*. at ¶1.
[4] *Id*.
[5] State's Resp. in Opp'n to the Def.'s Mot. to Dismiss Indict. for Discovery Violations, D.I. 81, ¶2 (May 2, 2022)(hereinafter "State's Resp.").

the files on the laptops were encrypted.[6] In late October 2021, HTCU was able to access the data on one of the laptops but not the other devices.[7] It was not until December 21, 2021, nearly three months after the search warrant had been executed, that the data contained in all three laptops was accessed and the encryption challenges were overcome.[8]

Once access had been obtained, information from the laptops was to be provided to a Filter Team at the DOJ before it was eventually turned over to the Prosecution Team.[9] The Filter Team process was approved by the Court on October 8, 2021.[10] The Filter Team's purpose was to review privileged information and communications from the seized devices and screen the Prosecution Team from that information to protect the Defendant's rights. More specifically, there was a concern that the laptops contained privileged and confidential information and communications between the Defendant and the DOJ attorney assigned to the

---

[6] State's Resp. Ex. B at p. 1 (State's Timeline of Discovery Production).
[7] State's Resp. Ex. B, at p. 1.
[8] *Id*. at 1-2.
[9] State's Resp. at ¶6; *See* Del. Dept. of Justice Policy # 6.17 (Use of Filter Teams)(April 30, 2019); The Filter Team concept had been approved by another judge of the Superior Court, with the process appearing to call for the Filter Team to review the documents, and if potential privileged documents were discovered, they could be provided to the Court for an *ex parte* review and a decision whether they should be disclosed.
[10] State's Resp. at ¶1.

Auditor's office as well as communications with the Defendant's present criminal counsel.[11]

Sometime in January of 2022, the DOJ discovered that they would be unable to utilize the Delaware State Police's forensic search tools because those tools were limited to handling interstate crimes against children.[12] As a result, in early February of 2022, the DOJ met with Parcels, a commercial discovery vendor, to determine if they could aid in creating a protocol to search the files on the three laptops.[13] It was not until a month later in early March of 2022 that the files from these laptops were transferred to a thumb drive and delivered to the Filter Team.[14]  More than six months after execution of the search warrant, on April 6, 2022, the State provided to the Defendant the information contained on these devices, which consisted of 511,266 files.[15] In addition, the State restored the hard drive on the Defendant's work computer and returned it to her on April 22, 2022.

Now, the Defendant moves to dismiss the indictment or sanction the State for the late production of Rule 16 discovery and for the failure of the State to meet its *Brady* obligations.[16]  The State responded on May 2, 2022, opposing Defendant's Motion

---

[11] *Id.*
[12] State's Resp. Ex. B. at 1-2.
[13] *Id*. at 2.
[14] *Id.*
[15] Def.'s Mot. at ¶14.
[16] *Id*. at p. 19.

and provided a timeline detailing the difficulties in obtaining access to the information on the laptops that were seized. [17] Defendant filed a reply to the State's response on May 4, 2022.[18] The trial of this matter is set to begin on May 31, 2022.

## II.   DISCUSSION

To start, there is nothing in the State's response to Defendant's Motion to suggest that the Filter Team ever reviewed the documents on the laptops seized from the Defendant or performed any filtering process at the time they were returned to the Defendant. It appears that the DOJ, recognizing that this information was potentially discoverable, and trial was upcoming, simply provided the electronic file to the defense without any review of their discovery or *Brady* obligations.

It is also difficult to determine from the State's response what digital forensic files retrieved by Parcels have been shared with the Prosecution Team and, more importantly, whether the State intends to utilize any of the information from the laptops at trial. For the purposes of the present Motion, however, the Court will assume there are some documents the State intends to utilize in its case in chief. It is in this shadow of events that the Motion to Dismiss has been filed.

---

[17] State's Resp. at p. 8, Ex. B.
[18] Def.'s Reply to the State's Resp. in Opp'n to Def.'s Mot. to Dismiss Indict. or Alternatively Sanction the State for Disc. Violations, D.I. 82, p. 14 (May 4, 2022)(hereinafter "Def.'s Reply").

A. <u>Rule 16 Discovery Violation</u>

Defendant contends that the State's untimely disclosure of voluminous material in April of 2022 violates Rule 16.[19] Conversely, the State argues that it has not violated Rule 16 because the Defendant has had continuous access to certain materials, the number of documents produced is not voluminous, the amount of files is misleading, the discovery was produced in a searchable, indexed database, and, finally, the materials were produced fifty days before trial.[20]

Rule 16(a)(1)(C) requires the State to permit the defendant to examine "books, papers, documents, photographs, tangible objects, buildings or places," provided that they "are within the possession, custody or control of the [S]tate" and are either (1) "material to the preparation of the defense," (2) "intended for use by the [S]tate as evidence in chief at the trial," or (3) "were obtained from or belong to the defendant."[21] This rule imposes an obligation to look for discoverable evidence and a continuing responsibility to disclose the existence of such evidence.[22] The State has a duty to inform itself of available discoverable evidence and cannot evade its duties through ignorance.[23] Moreover, Rule 16(d)(3)(B) requires the State to

---

[19] Def.'s Mot. at ¶26.
[20] State's Resp. at ¶¶3-6.
[21] Del. Super. Crim. R.16(a)(1)(C).
[22] *Patterson v. State*, 2022 WL 1310318, at *4 (Del. May 3, 2022).
[23] *Valentin v. State*, 74 A.3d 645, 651 (Del. Aug. 26, 2013).

respond to a discovery request served upon it within twenty days after service of the request unless some other time is ordered by the Court.[24]

On November 30, 2021, the Defendant served her initial discovery request on the State.[25] The Court established a motion deadline of January 31, 2022, pertaining to discovery, believing this would provide the parties with sufficient time to provide discoverable materials, have them reviewed by counsel and if appropriate, file motions.[26] Based on the comments of counsel, it appears that substantial discovery has been provided by the State and there has been a cooperative effort by counsel to resolve discovery disputes or requests without involving the Court.

Even the Defendant's Motion reflects there were nearly 19,000 documents and 51 audio files of witness interviews provided in earlier discovery.[27] All of this discovery was provided by the end of March 2022 in sufficient time to be reviewed and considered by the defense.[28] Accordingly, it appears the Defendant has received the documents the State intends to utilize at trial and has sufficient information to prepare her defense. And, if the Defendant had requested, which she has not, more

---

[24] Del. Super. Crim. R. 16(d)(3)(B).
[25] Def.'s Mot. at ¶4.
[26] *Id*. at ¶6.
[27] *Id*. at ¶¶10-11.
[28] *Id*.

time to review the files and documents provided in this recent discovery, certainly the Court would have favorably entertained that request.

That said, the Court cannot condone the failure of the State to provide these materials timely and finds that the State has no justifiable reason for waiting six months to deliver a large file of unreviewed documents to the Defendant. At the time these documents were produced, trial was less than two months away and even experienced counsel would have difficulty searching, reviewing, and reasonably considering their implications. This conduct prevented defense counsel from timely filing discovery motions to meet the deadline established by the Court and occurred without any reasonable explanation other than an overworked HTCU and encryption hurdles created by State's Department of Technology and Information ("DTI").

A trial judge has broad discretion to fashion an appropriate sanction for a discovery violation committed by the State.[29] More specifically, Rule 16(d)(2) provides that:

> If at any time during the course of the proceedings it is brought to the attention of the court that a party had failed to comply with this rule, the court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances.[30]

---

[29] *Oliver v. State*, 60 A.3d 1093, 1097 (Del. Feb. 4, 2013).
[30] Del. Super. Crim. R. 16(d)(2).

When considering the sanction to be imposed in the event of a discovery violation by the State, trial courts are to "weigh all relevant factors, such as the reason for the State's delay and the extent of prejudice to the defendant."[31]

While the State justification reflects their failure to use a commonsense management of potential critical documents, there is nothing to suggest they did so in bad faith or to obtain a litigation advantage. As such, dismissal of the Indictment as requested by the Defendant is not justified.

However, this does not mean the Court can simply overlook what has occurred since these laptops were seized in September of 2021. As counsel is aware, the trial of this matter needs to promptly occur to resolve whether the Defendant can continue to serve as the State's Auditor and, whether she can run for reelection this November. As such, attention needs to be directed towards trial and not discovery matters that should have been resolved months ago.

Therefore, the Court believes that a fair and appropriate sanction to impose is that any material from the three laptops seized during the search of the Defendant's office that was produced after March 31, 2022, is excluded from the State's case in chief. If documents from the laptops are used by the Defendant in her case, the Court will

---

[31] *Brown v. State*, 897 A.2d 748, 752 (Del. 2006).

9

consider to what extent the State may use the excluded documents in rebuttal during trial.

### B. *Brady* Violation

Defendant also alleges in her Motion that the State's belated production of discovery violates the State's *Brady* obligations.[32]  *Brady* "is not a discovery rule, but a rule of fairness and minimum prosecutorial obligation."[33]  A *Brady* violation occurs where there is a "suppression by the prosecution of evidence favorable to an accused…[that] violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[34]  In order for the State to discharge its responsibility under *Brady*, the prosecutor must disclose all relevant information obtained by the police or others in the prosecutor's office to the defense.[35]  That entails a duty on the part of the individual prosecutor "to learn of any favorable evidence known to others acting on the government's behalf in the case, including the police."[36]

"[T]he nondisclosure must do more than impede the defendant's ability to prepare for trial; it must adversely affect the ability to reach a just conclusion, to the

---

[32] Def.'s Mot. at ¶27.
[33] *U.S. v. Beasley*, 576 F.2d 626, 630 (5th Cir. 1978)(citing *U.S. v. Agurs*, 427 U.S. 97, 107 (1976)).
[34] *Wright v. State*, 91 A.3d 972, 987 (Del. May 19, 2014)(quoting *Brady v. Maryland*, 373 U.S. 83, 87 (1963)).
[35] *Wright*, 91 A.3d at 987.
[36] *Id*. (quoting *Kyles v. Whitley*, 514 U.S. 419, 437 (1995)).

10

prejudice of the defendant."[37]  The Third Circuit has held that there is "[n]o denial of due process…if *Brady* material is disclosed to [the defendant] in time for its effective use at trial."[38]  And, for impeachment purposes, "the Third Circuit has held that a defendant's 'right to a fair trial will be fully protected if disclosure is made the day that the witness testifies.'"[39]

"As a general rule, the [State] is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence,"[40] and when the State produces voluminous discovery, the risk of exculpatory material being suppressed is reduced.[41]  "*Brady* and its progeny permit the government to make information within its control available for inspection by the defense, and impose no additional duty on the prosecution team members to ferret out any potential defense-favorable information from materials that are so disclosed."[42]  Additionally, "the government is not obliged under *Brady* to furnish a defendant with information which [s]he already has or, with reasonable diligence, she can obtain for [her]self."[43]

---

[37] *U.S. v. John*, 391 F. Supp. 3d 458, 463 (E.D. Pa. Aug. 1, 2019)(quoting *U.S. v. Starusko*, 729 F.2d 256, 262 (3d Cir. 1984)).
[38] *Id*. at 464 (citing *U.S. v. Higgs*, 713 F.2d 39, 44 (3d. Cir. 1983)).
[39] *Id*.
[40] *U.S. v. Warshak*, 631 F.3d 266, 297 (6th Cir. Dec. 14, 2010)(quoting *U.S. v. Skilling*, 554 F.3d 529 (5th Cir. 2009), vacated in part on other grounds, 561 U.S. 358 (2010)).
[41] *U.S. v. Meek*, 2021 WL 1049773, at *5 (S.D. Ind. Mar. 19, 2021).
[42] *U.S. v. Pelullo*, 399 F.3d 197, 212 (3d. Cir. Feb. 25, 2005).
[43] *Id*. at 202.

It is unfortunate that this is an issue at this point in the litigation. The State could have easily resolved this matter by simply having HTCU mirror the hard drives of the laptops and return them to the Defendant. This would have provided the State access to the information on the laptops without jeopardizing their investigation and, even the defense agrees, that if the Defendant had timely access to the same documents, the *Brady* obligation of the State is minimized.

From the Court's perspective, it is reasonable to believe the documents on the Defendant's daughter's laptop as well as those of the Defendant's personal work laptop may have relevant and potentially critical documents to both litigants. The inability of the State to obtain access to these documents for nearly six months speaks volumes as to the technical forensic capability of state investigators. But in an unusual twist of fate, the lack of technical access plays in the State's favor as to their *Brady* obligation.

The State's timeline is undisputed when it asserts that the State was attempting to access the three laptops from September 29, 2021, to early March of 2022. So even if the State had an obligation, as argued by the defense, to search the files for *Brady* material, it appears the State did not have the technical capability to do so. Under these circumstances, it is difficult for the Court to find a *Brady* violation because there was only a month delay from the time the State gained access to the material to when they delivered that material to the defense. The Court reminds the

12

State, however, that since it now appears both the Filter Team and the Prosecution Team have access to these documents, their *Brady* obligations continue.

The Court also believes it is important to put this case into some perspective. This is not a complex financial crime that was executed over multiple years with extensive financial documents to review and analyze, nor do the parties need hundreds of search terms to find and obtain relevant documents. In fact, the case is rather simplistic in its allegations which makes searching the documents more manageable and reasonably attainable before trial. It is also important to note, the files in dispute here are from the Defendant's and her daughter's own laptops to which they should reasonably have some idea as to what is contained therein.

Moreover, in providing the files to the defense, the State has done so in a functional and searchable format which the Defendant has already utilized to support her Motion. There is also no indication that the State supplemented this production with irrelevant documents or made access to them unnecessarily burdensome. If the defense wants additional time to search and review the documents, the Court is willing to consider that request, but of course, this will cause a delay in the trial date.

Finally, it appears that some of the discovery contains information belonging to the Defendant, of which she allegedly has had continuous access to, including her State of Delaware email and State of Delaware OAOA network. The Court is

satisfied that the Defendant can search and use the produced information to aid her defense effectively, and the parameters set forth by the Court earlier in this opinion are sufficient to ensure a fair and just trial and prevent any potential prejudice to the Defendant.  As a result, the Court finds no additional sanctions are warranted to the extent *Brady* material was not timely produced.

### III. CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss is **GRANTED in part** and **DENIED in part**.

**IT IS SO ORDERED.**

/s/ William C. Carpenter, Jr.
Judge William C. Carpenter, Jr.