IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

KENDELL CEDENO )
)
    Defendant-Below )
    Appellant, )
)    Case No.: 2109012465
    v. )
)
STATE OF DELAWARE )
)
    Plaintiff-Below )
    Appellee. )
)

Submitted:  June 26, 2023
Decided:  September 27, 2023

## <u>**MEMORANDUM OPINION**</u>

*Appeal from the Court of Common Pleas.*
**AFFIRMED**

Jason R. Antoine, Esquire, Jason R. Antoine Attorney at Law PLLC, Wilmington, Delaware, for Appellant.

Elaine G. Barton, Esquire, Department of Justice, Wilmington, Delaware, for the Appellee.

**BUTLER, R.J.**

After a bench trial in the Court of Common Pleas, Kendell Cedeno was convicted of Driving a Vehicle Under the Influence of Alcohol ("DUI"), in violation of 21 *Del. C.* § 4177. He has appealed his conviction to this Court. While the Court has reviewed the entire record, he asks us to review a single evidentiary ruling. Upon review, the Court affirms the decision of the Court of Common Pleas.

## I. FACTS AND PROCEDURAL BACKGROUND

In September 2021, Corporal Marchione of the Delaware State Police responded to a call of a vehicle on the side of the road. Upon arrival, Corporal Marchione saw Mr. Cedeno trying to change a flat tire while standing in the roadway. The officer testified that the area of the road where the vehicle was situated was narrow and close to a dangerous curve.

After the usual back and forth – including Cedeno's protestation that he had consumed just the legendary "two beers"[1] – the officer suspected that Cedeno was under the influence of alcohol. Cedeno was transported to Delaware State Police Troop 1 and, after an Intoxilyzer test registered Mr. Cedeno's blood-alcohol content ("BAC") of .315. Cedeno was arrested.

At trial, as a prerequisite to admitting Mr. Cedeno's Intoxilyzer test results, the State moved to admit Intoxilyzer calibration certification records through

---

[1] A Westlaw search of "two beers" with the words "alcohol" and "driving" yields its mention in some 2,000 cases nationwide. If Budweiser is the king of beers, then surely "two beers" is the king of explanations.

2

Corporal Marchione's testimony to establish that the Intoxilyzer was working properly when it was administered to Mr. Cedeno. Defendant's counsel objected to the admission of the Intoxylizer certifications. Defendant's counsel argued that the certification records produced by the State were incomplete, and, as a result, the State should be precluded from admitting them into evidence. Ultimately, the Court of Common Pleas allowed the admission of the certifications, finding them reliable and properly authenticated.

The trial proceeded. The State presented evidence showing the Defendant had a BAC well above the legal limit. The Court of Common Pleas found the Defendant guilty of driving under the influence of alcohol. This appeal followed.

## II. STANDARD OF REVIEW

In an appeal to the Superior Court, "the standard of review is whether there is legal error and whether the factual findings made by the trial judge are sufficiently supported by the record and are the product of an orderly and logical deductive process."[2] If the Court of Common Pleas made findings that are supported by the

---

[2] *Onkeo v. State*, 957 A.2d 2, 2008 WL 3906076, at *1 (Del. Jul. 1, 2008) (TABLE); *Wheeler v. Clerkin*, 871 A.2d 1129, 2005 WL 873341, at *2, (Del. Apr. 13, 2005) (TABLE).

record, then this Court must accept them.[3]  The Court may review questions of law *de novo*.[4]

Decisions by the Court of Common Pleas to admit or exclude evidence are reviewed by this Court under an abuse of discretion standard.[5]  "An abuse of discretion 'occurs when a court has … exceeded the bounds of reason in view of the circumstances,' [or] … so ignored recognized rules of law or practice … as to produce injustice."[6]  Reversal of a lower court's evidentiary decision is permitted only if there was a clear abuse of discretion.[7]

## I.   ANALYSIS

Those with some familiarity with the law of DUI in Delaware know that when the State seeks to introduce the results of an Intoxilyzer test, it must produce the Intoxilyzer card showing the defendant's BAC as recorded by the Intoxilyzer machine.[8]  And most also know that in order to satisfy the foundational requirements of scientific validity of the BAC results as recorded by the Intoxilyzer, Delaware case law requires that the State produce a "Certification Sheet" prepared by the State

---

[3] *Onkeo*, 2008 WL 3906076, at *1.
[4] *DiSabatino v. State*, 808 A.2d 1216, 1220 (Del. Super. 2002) *aff'd*, 810 A.2d 349, 2002 WL 31546525 (Del. Nov. 2, 2002) (TABLE).
[5] *Delaware Acceptance Corp. v. Swain*, 2012 WL 6042644, at *3 (Del. Super. Nov. 30, 2012).
[6] *Id.* (citing *Culp v. State*, 766 A.2d 486, 489 (Del. 2001) (quoting *Firestone Tire & Rubber Co. v. Adams*, 541 A.2d 567, 571 (Del. 1988)).
[7] *Delaware Acceptance Corp.*, 2012 WL 6042644, at *3.
[8] *See* 21 Del. C. § 4177(C)(4) (breath test admissible to prove DUI).

4

Chemist, certifying that on dates prior to and after the subject test, the machine was operating properly.[9]

The Certification Sheet for each Intoxilyzer in service in Delaware is checked for calibration by the State Chemist periodically. The State Chemist runs known samples of .05 and .10 through the machine and records how close the machine reading is to the known sample. These readings, along with the date and time they are taken, are recorded on the Certification Sheet.[10] In addition, the Chemist breaths into the machine and records the Chemist's own result (hopefully zero).[11]

In addition to the Certification Sheet, there is a perhaps less well-known backup to the Certification Sheet: the "flimsies." What are "flimsies?" The Court in *State v. Vickers*[12] explained flimsies thusly:

> When the operator conducts a calibration test, the procedure is a test record card hereinafter ("Intoxilyzer Card") is placed into the instrument upon which the results are printed. An Intoxilyzer Card consists of 4 pieces of paper with an original printout and 3 identical carbon copies (sometimes referred to as "flimsies."). The Intoxilyzer Cards are signed by the operator who performed the cal-check and that data is transferred onto the calibration certification sheet. A calibration certification sheet is generated much like an Intoxilyzer Card, with 3 identical carbon copies produced along with it. These copies, like all Intoxilyzer Cards and accompanying flimsies contain the Intoxilyzer's

---

[9] *E.g., McConnell v. State,* 639 A.2d 74, 1994 WL 43751, at *1 (Del. Feb. 3, 1994) (TABLE).

[10] *See*, Transcript of Trial dated October 27, 2022 at 92 (State's exhibits 1 and 2).

[11] *See Id*.

[12] 2010 WL 2299001, at *6 (Del. Com. Pl. Jun. 9, 2010) (footnotes omitted).

serial number, the date that the test was conducted, and printed on, the results of the test, and the precise times the results printed.[13]

From the Certification Sheets introduced in evidence in this case, we know that the final lines of the Certification Sheet include the statement that "An original copy of all test cards used during this calibration check can be found stapled to this form."[14]

The State's presentation was less than perfect. Apparently, the sole testifying witness – the police officer – went to the police station, located the relevant Certification Sheets on the day of trial, and took cell phone pictures of the Certification Sheets and one page of the "flimsies." He sent these pictures by text message to the prosecutor, who printed them out in the Courthouse. We know from the State's Rule 16 discovery materials, however, that there were several flimsies attached to the certifications.[15] For reasons unknown, the State did not have a copy

_____

[13] *Id*. The Court notes that in 2010, when *Vickers* was decided, there was apparently but one Intoxilyzer Card/flimsie per machine per certification cycle. The record here suggests the State Chemist may now do more than one check per certification cycle, resulting in more than one Intoxilyzer Card/flimsie. This may explain why there may have been more than one flimsie per certification sheet as argued by the Defendant, but it does not change the Court's analysis.

[14] Transcript of Trial dated October 27, 2022 at 92 (State's exhibits 1 and 2)

[15] The State appended a copy of its full discovery response in its Answering Brief on appeal. The discovery response included a copy of multiple flimsies attached to each certification sheet. The defense urges in its reply brief that the appendix should be ignored as it is not part of the record on appeal. Because the Court rules that the flimsies are not relevant to the admissibility of the certification sheets, the State's appendix is merely informative of the practice and is otherwise not considered on appeal.

of its own Rule 16 discovery response to introduce into evidence and it instead introduced only the officer's recently photographed, single flimsie.

This is the heart of the Defendant's claim on appeal. According to the Defendant, the Certification Sheets introduced into evidence were incomplete because they did not include *all* of the flimsies he had received in discovery. This failure, according to the Defendant, was fatal to the State's foundational requirement to introduce the pre and post Certification Sheets.

Defendant's argument conflates the "flimsies" with the Certification Sheet signed by the Chemist. The Certification is signed and dated by the State Chemist and certifies that the Intoxilyzer is working "Properly and Accurately." That is the essential issue to admissibility of the relevant test – the one taken showing the defendant's BAC. The Certification Sheet is, in every sense, the final word of the State Chemist on the proper functioning of the machine. The flimsies are merely the basis upon which the Certifier rests his/her Certification; they are not the Certification itself. The Court does not lightly presume that the certifier simply "makes up" the certification. As has been repeated many times in these cases, "[t]here is a well-established presumption that, in the absence of evidence to the contrary, those responsible for certain services to the public will carry out their duties

in a proper, careful and prudent manner."[16] Defendants arguments do not overcome that presumption.

The stapled Intoxilyzer cards/flimsies that form the basis of the Chemist's conclusion are merely the backup data that support the Certification. The Chemist may conduct whatever calibration checks s/he feels is appropriate, but it is the Chemist's Certification that establishes the reliability of the testing done on the Defendant.[17]

That does not mean that the test cards used during the calibration are any part of the Certification, which stands on its own. Rather, it invites those with questions to review the basis for the certification and, if they find "evidence to the contrary," to file a motion and/or seek other relief in the Court.

Consider the case of *Oliver v. State*.[18] The State failed to produce a lab expert's bench notes in a drug trial despite a defense request in discovery.[19] Like the flimsies are to a Certification Sheet, the bench notes in a drug case are the

---

[16] *Judah v. State*, 234 A.2d 910, 911 (Del. 1967); *See, e.g., State v. McCoy,* 2012 WL 1415698, at *5 (Del. Super. Feb. 21, 2012) (state chemist).

[17] *See McConnell v. State*, 639 A.2d 74, 1994 WL 43751, at *1 (Del. Feb. 3, 1994) (TABLE) ("In the absence of evidence to the contrary, there is a presumption that the State Chemist acted carefully and in a prudent manner. *Judah v. State,* Del. Supr., 234 A.2d 910, 911 (1967). Thus, the record reflects that the trial court properly exercised its discretion, in accordance with well-established principles of Delaware law, when the certifications of the State Chemist and the results of McConnell's intoxilyzer test were admitted into evidence.")

[18] 60 A.3d 1093 (Del. 2013)

[19] *Id.* at 1096

backups that may explain the testing procedure, processes used, etc., in reaching the drug expert's conclusion. In *Oliver*, the State gave over the bench notes on the first day of trial and trial judge gave defense counsel a day to review the notes in an effort to remediate the State's error. The Delaware Supreme Court held that merely delaying trial was an insufficient remedy and reversed and remanded.[20] Thus, *Oliver* establishes a discovery obligation that is quite apart from an admissibility determination. This, however, is not an appeal over discovery, it is an appeal of admissibility. *Oliver* did not touch upon the admissibility question.

Moreover, when defense counsel raised his foundation argument here, the State offered to recess the trial over lunch and retrieve the rest of the flimsies from the log books back at the police station. Defendant demurred; clearly, he felt his best argument was this "lack of foundation" argument raised here, which the Court finds, well, flimsy.

It may be that defense counsel has come to see the test cards attached to the Certification Sheet as "part" of the certification. But Defendant's argument confuses his entitlement to discovery with admissibility of the Certification Sheet at trial. The Court can easily agree that the "flimsies" are discoverable by the defense upon a proper request. But the rules of evidence provide no recourse to deny admissibility merely because the testing slips are missing from the trial exhibit.

---

[20] *Id.* at 1099-1100.

So, the Court should make clear, Defendant likely has a right to explore the backup data/Intoxilyzer Cards/flimsies that comprise the testing that produces the Certification Sheet of the State Chemist. That issue, however, is not the one before the Court. And there may be a case in which the data reveals a question about the Certification Sheets that is worthy of pretrial litigation. Again, that issue is not before the Court. The Court concludes that the backup cards that are used by the Chemist to make his/her certification are not, as an evidentiary matter, such an integral part of the Certification Sheet itself that their absence forecloses admissibility of the Certification Sheets at trial. Thus, Defendant's appeal must be denied, and the judgment of the Court of Common Pleas must be AFFIRMED.

## I.      CONCLUSION

For the reasons set forth herein, Defendant's conviction for DUI is **AFFIRMED**.


       **IT IS SO ORDERED.**


                                          /s/ Charles E. Butler
                                          Charles E. Butler, Resident Judge