# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,    )
              )
  Plaintiff,      )
              )
  v.         ) Cr. ID. Nos. 1702000035
              )     1702000526
JERMAINE TINGLE,    )
              )
  Defendant.     )

Submitted: May 1, 2023
Decided: June 28, 2023

Upon Commissioner's Report and Recommendation
That Defendant's Motion for Post-Conviction Relief
Should Be Denied

**ADOPTED IN PART**

**<u>ORDER</u>**

This 28th day of June 2023, the Court has considered the Amended Motion for Post-Conviction Relief, the State's Response to Defendant's Amended Motion for Post-Conviction Relief, Defendant's Reply in Support of His Amended Motion for Post-Conviction Relief, the Commissioner's Report and Recommendation (the "Commissioner's Report"), Defendant's Appeal from the Commissioner's Findings of Fact and Recommendations, the State's Response to Defendant's Appeal, and the relevant proceedings below.

1

*Background and Procedural Posture*

On January 9, 2018, a jury convicted Jermaine Tingle ("Defendant") of multiple firearm and drug offenses. Defendant was convicted of two counts of Tier 4 Drug Dealing, one count of Drug Dealing, one count of Tier 5 Possession, one count of Tier 4 Possession, one count of Possession of Drug Paraphernalia, two counts of Conspiracy Second Degree, Possession of a Firearm by a Person Prohibited ("PFBPP"), and using a cell phone while driving. Defendant was found not guilty of Possession of a Firearm During the Commission of a Felony ("PFDCF").

On September 21, 2018, Defendant was sentenced. For Tier 4 Drug Dealing, Defendant was sentenced to 25 years at supervision level V, suspended after 4 years, for 18 months at supervision level III. For PFBPP, Defendant was sentenced to 15 years at supervision level V with credit for 260 days previously served. For Drug Dealing, Defendant was sentenced to 8 years at supervision Level V, suspended after 1 year, for 18 months at supervision Level III. For each of the Conspiracy Second Degree counts, Defendant was sentenced to supervision Level V for 2 years, suspended for 1 year at supervision Level III. For Possession of Drug Paraphernalia, Defendant was ordered to pay a fine of $100 plus all surcharges and fees. For cell phone use while driving, Defendant was ordered to pay a fine of $100 plus all surcharges and fees. The probation times for Drug

2

Dealing, Conspiracy Second Degree, and Possession of Drug Paraphernalia, all run concurrently. Thus, Defendant was sentenced to a total of 52 years of Level V incarceration, suspended after 20 years, followed by 18 months at Level III probation.

Defendant filed a direct appeal to the Delaware Supreme Court. On May 10, 2019, the Delaware Supreme Court affirmed the judgment of the Superior Court after determining the appeal was without merit.[1]

On June 20, 2019, Defendant filed a *pro se* motion for post-conviction relief and requested appointment of counsel. The Court granted Defendant's request for the appointment of counsel. On October 29, 2020, Defendant's appointed counsel filed Defendant's Amended Motion for Post-Conviction Relief.

Defendant argues his counsel during the trial at issue ("Trial Counsel") was ineffective because: (1) Trial Counsel failed to challenge the administrative search of Defendant's residence; (2) Trial Counsel failed to correct the record; (3) Trial Counsel failed to request litigation packets for the lab reports; (4) Trial Counsel failed to meaningfully challenge the State's drug dealing expert; (5) Trial Counsel failed to substantively meet with Defendant prior to Defendant taking the stand, which allegedly led to the admission of hearsay; (6) Trial Counsel failed to substantively meet with Defendant prior to Defendant taking the stand, which led

---

[1] *Tingle v. State*, 2019 WL 2079060 (Del. 2019).

3

to Trial Counsel failing to challenge the admission of Defendant's prior convictions; and (7) Trial Counsel's relationship with Defendant was broken.

The motion was referred to a Superior Court Commissioner in accordance with 10 *Del. C.* § 512(b) and Superior Court Criminal Rule 62 for proposed findings of fact and conclusions of law. Per a revised briefing schedule, Trial Counsel submitted an Affidavit responding to Defendant's claims on January 28, 2021. On April 20, 2021, the State submitted its Response to Defendant's Amended Motion for Post-Conviction Relief. On August 31, 2021, Defendant filed his Reply in Support of His Amended Motion for Post-Conviction Relief.

On April 13, 2022, the Commissioner heard oral argument regarding Defendant's Amended Motion for Post-Conviction Relief. On June 16, 2022, both the State and Defendant filed supplemental Rule 61 responses. The Commissioner issued the Commissioner's Report on August 26, 2022. The Commissioner recommended that Defendant's Motion for Postconviction Relief be denied.

"Within ten days after filing of a Commissioner's proposed findings of fact and recommendations . . . any party may serve and file written objections."[2] After receiving an extension of time, Defendant filed his Appeal from Commissioner's Findings of Fact and Recommendations on January 26, 2023. After receiving an

---

[2] Super. Ct. Crim. R. 62(a)(5)(ii).

4

extension of time, the State filed its Response to Defendant's Appeal. The Court now reviews the record *de novo*.

### *Legal Standard for Ineffective Assistance of Counsel*

To prevail on an ineffective assistance of counsel claim, Defendant must meet the two-pronged *Strickland* test by showing: (1) that counsel performed at a level "below an objective standard of reasonableness;" and (2) that the deficient performance prejudiced Defendant.[3] The first prong requires Defendant to show, by a preponderance of the evidence, that counsel was not reasonably competent.[4] The second prong requires Defendant to show that there is a reasonable probability that, but for counsel's ineffectiveness, the outcome of the proceedings would have been different.[5] In other words, Defendant must show that but for his Trial Counsel's alleged error, he would have been acquitted.[6]

"A court need not first determine whether [trial] counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed."[7]

---

[3] *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).
[4] *Id.* at 687.
[5] *Id.* at 694.
[6] *Couch v. State*, 945 A.2d 593 (Table), 2008 WL 390754, at *1 (Del. 2008).
[7] *Strickland,* 466 U.S. at 670.

*Claim I: Administrative Search*

On January 31, 2017, the Delaware State Police[8] stopped Defendant for a cell phone violation while he was driving a Kia rental car. Stephen Dunfee ("Dunfee") was the front passenger in the car. Dunfee was in possession of 650 bags of heroin. Defendant was in possession of approximately $2,000 in cash. Police also found an Audi key in the Kia rental car. The Police arrested both Defendant and Dunfee.

At the time of the traffic stop, Defendant was on Level III probation. After the stop, a probation officer[9] present at the traffic stop contacted his supervisor. The probation officer and his supervisor conducted a case conference concerning the traffic stop. The supervisor granted approval to conduct an administrative search of Defendant's reported residence, 824 N. West Street, Apartment 14. During the search of Defendant's bedroom, Police found ten bundles of cash— each wrapped in black rubber bands—totaling $20,000. Police also found another $1,065 in a pair of jeans.

On February 1, 2017, a detective from the Wilmington Police Department learned of the traffic stop. The detective had been conducting a separate drug

---

[8] The Delaware State Police Governor's Task Force, the Delaware State Police, and the Wilmington Police Department will collectively be referred to as "Police".
[9] The Court notes that the probation officer present at the traffic stop was not Defendant's assigned probation officer.

investigation involving Defendant and Dunfee for the previous four to six weeks. The detective obtained a search warrant for 70 Hillside Road—Dunfee's residence. While searching an unlocked safe in Dunfee's bedroom, Police found a bag of heroin, an unlocked safe, a partial bundle of heroin, $870 in cash, and an unloaded .50 caliber Desert Eagle firearm. In the garage, Police found a locked blue 2002 Audi A4, which the detective previously had seen Defendant drive. On the floor next to the Audi, Police found several items used to package heroin (clear plastic bags, blue glassine bags, black rubber bands, etc.).

After towing the Audi to the police station, Police found 650 bags of heroin in the trunk. Police also found a wallet inside the Audi containing Defendant's identifying information. The Audi was registered to Defendant's mother. Police were able to use the Audi key that Police found during the traffic stop to operate the Audi.

Defendant contends there was no nexus between any suspected wrongdoing and his residence. Defendant's Trial Counsel did not file a motion to suppress the administrative search of his residence at 824 N. West Street prior to trial. Defendant's Trial Counsel did not file a motion to suppress because he thought it would be unsuccessful.

"The United States Supreme Court and [the Delaware Supreme Court] have held that a warrantless administrative search of a probationer's residence requires

the probation officer to have 'reasonable suspicion' or 'reasonable grounds' for the search."[10]  A determination of reasonable suspicion requires the officer to look to the "totality of the circumstances" to see whether the officer has a "'particularized and objective basis' for suspecting legal wrongdoing."[11]  "At a minimum, the officer must have a reasonable basis to suspect wrongdoing, and evidence thereof will be found at the location to be searched."[12]

Defendant cites *Culver v. State*[13] and *State v. Johnson*[14] to support his assertion that the administrative search of his residence was improper.  Each of those cases concerned law enforcement relying upon an informant's tip to conduct an administrative search of the probationer's residence.  The Court in each of those cases required demonstration of a link between the residence and the alleged wrongdoing.[15]  In contrast, the officers involved with Defendant's traffic stop were relying on their own experience and observations.  The officers personally interacted with Defendant and Dunfee.  The officers personally located 650 bags of

---

[10] *Sierra v. State*, 958 A.2d 825, 828 (Del. 2008) (citing *Griffin v. Wisconsin*, 483 U.S. 868, 872–73 (1987); *United States v. Knights*, 534 U.S. 112, 118–19 (2001); *Donald v. State*, 903 A.2d 315, 318–19 (Del.2006)).
[11] *United States v. Arvizu*, 534 U.S. 266, 273 (2002).
[12] *State v. Johnson*, 2014 WL 6661154, at *3 (Del. Super.).
[13] 956 A.2d 5 (Del. 2008).
[14] 2014 WL 6661154, at *3 (Del. Super.).
[15] *See id.* ("The information regarding Johnson's alleged drug activity lacks specificity about when this activity would occur or any connection to Johnson's home and it appears not to be based upon personal information from the tipster."); *Culver*, 956 A.2d at 15 ("Because we have concluded that [the tipster's] information did not form a basis for reasonable suspicion, we conclude that the probation officers had no basis under their mandated framework for analysis to believe there was reasonable suspicion to search Culver's home on October 16.").

heroin in the possession of a passenger of Defendant's car. Additionally, the probation officer at the traffic stop obtained approval prior to conducting the administrative search.

Trial Counsel decided it was futile to file a motion that he would likely lose. The Court finds Trial Counsel was not deficient in this instance. Even if Trial Counsel would have won a motion to suppress the administrative search, the only evidence obtained in the search was the approximately $20,000 in cash at the residence. The overwhelming evidence from the traffic stop and the search of Dunfee's residence still would have been admissible at trial. Thus, the Court finds it is not reasonably likely that the outcome of the trial would have been any different had the administrative search been suppressed.

### *Claim II: Correcting the Record*

One of the detectives testified at trial on cross examination that he found additional heroin during the traffic stop in the center console of the Kia rental car. This testimony was factually incorrect—the officers did not find additional heroin in the center console. The only heroin the officers found during the traffic stop was the heroin on Dunfee's person. Defendant's Trial Counsel failed to correct the record. Defendant contends he was prejudiced because this inaccurate testimony was the testimony that placed Defendant in the closest proximity to the drugs.

> [T]o establish constructive possession, the State must present evidence that the defendant: (1) knew the location

9

of the drugs; (2) had the ability to exercise dominion and control over the drugs; and (3) intended to guide the destiny of the drugs.... Evidence of a defendant's constructive possession may be proven exclusively through circumstantial evidence since this Court no longer distinguishes between direct and circumstantial evidence in a conviction context.[16]

The Court gave the jury the following jury instruction:

Possession includes actual possession and constructive possession. . . . Constructive possession means the substance was within defendant's reasonable control. That is, in or about the defendant's person, premises, belongings or vehicle. In other words, defendant had constructive possession over a substance if defendant had both the power and the intention at a given time to exercise control over the substance either directly or through another person. Possession may be sole or joint. . . . Possession is proven if you find beyond a reasonable doubt defendant had actual or constructive possession, either alone or jointly with others.

"An error in admitting evidence may be deemed 'harmless' when 'the evidence exclusive of the improperly admitted evidence is sufficient to sustain a conviction . . . .'"[17]

The Court finds the failure to correct the record harmless. At trial, the evidence the prosecution presented was sufficient to sustain Defendant's conviction. The evidence showed that: (1) Dunfee had 650 bags of heroin in his

---

[16] *White v. State*, 906 A.2d 82, 86 (Del. 2006) (quoting *Hoey v. State*, 689 A.2d 1177, 1181 (Del.1997)).

[17] *Nelson v. State*, 628 A.2d 69, 77 (Del. 1993); *see also Wilson v. State*, 271 A.3d 733, 738 (Del. 2022).

possession while a passenger in Defendant's rental car; (2) Defendant had $2,000 in suspected drug proceeds at the traffic stop; (3) drug dealers often work in pairs—one holding the drugs, and the other holding the money; (4) Police found 650 bags of heroin in the trunk of the Audi registered to Defendant's Mother; (5) Defendant possessed a key to the Audi; (5) a detective had observed Defendant frequently driving the Audi A4; and (6) the vast majority of the heroin in the Audi was the same type of heroin found during the traffic stop. This evidence—without considering the testimony concerning heroin in the rental car's console—was more than sufficient for a jury to conclude Defendant engaged in drug dealing and had constructive possession of the drugs.

The Court finds that after considering the totality of the evidence, the Defendant has not met his burden of showing that correcting the record would have reasonably likely led to his acquittal on the drug charges.

### Claim III: Requesting Litigation Packets for the Lab Reports

Defendant claims his Trial Counsel was ineffective for failing to request and obtain the underlying notes and documentation ("litigation packets") that supported the final reports drafted by two NMS Labs employees (the "final reports"). The final reports determined the substances seized were heroin. Defendant argues that if Trial Counsel had requested the litigation packets, he would have either: (1) been granted a continuance to allow Trial Counsel sufficient time to review the packets,

allowing Defendant's request for new counsel to be granted; or (2) if the Court did not grant the continuance, Defendant would have had a successful claim on direct appeal that the trial court abused its discretion, and the conviction would have been reversed.

On the first day of trial, Trial Counsel raised a motion to suppress one of the final reports because the defense received the report late. The Court denied the motion because Defendant would not have suffered any prejudice from the delay. It was unlikely Defendant would have retained an opposing expert to contest the accuracy of the reports. Trial Counsel conceded: (1) it was not standard procedure to have independent review of the lab tests confirming the seized drugs were heroin; and (2) he was not aware of a finding where the lab reports were inaccurate.[18]

Defendant relies upon *Oliver v. State*[19] to support his assertion that had Trial Counsel requested the litigation packets, either: (1) a continuance would have been granted; or (2) if a continuance was not granted, it would have created an issue for appeal. In *Oliver*, counsel learned the notes existed during trial while cross examining the forensic chemist.[20] Counsel then requested and obtained the notes

---

[18] The Court notes that trial counsel and the Court acknowledged the exception of the problems in the Medical Examiner's Office, which had been rectified.
[19] 60 A.3d 1093 (Del. 2013).
[20] *Id.* at 1095.

related to the drug testing report.[21]  The State conceded that the notes fell within the bounds of the defendant's discovery requests.[22]  The Court recessed the trial until the following morning to provide defense counsel time to review the notes.[23]

The *Oliver* Court concluded that more than an overnight continuance was warranted to provide defense counsel ample time to consult an expert to review the highly technical notes from the forensic chemist.[24]  Had the State timely produced the requested notes, the *Oliver* defendant "would have been aware that an additional chemist was involved in the testing process [and] . . . could have investigated that chemist's actions and reputation."[25]  The State did not present the additional chemist as a witness, nor was the additional chemist subject to cross examination.  In sum, the *Oliver* defendant was able to articulate actual prejudice resulting from the late disclosure of the forensic chemist's notes.

In contrast, in the instant case, it is unknown whether underlying notes related to the final reports exist.  Trial Counsel filed a motion to suppress one of the final reports, but the State has stated that it is not in possession of the data underlying the chemists' reports.  Therefore, the State did not turn over any underlying notes during discovery, despite Trial Counsel's discovery request

---

[21] *Id.*
[22] *Id.*
[23] *Id.*
[24] *Id.* at 1099–1100.
[25] *Id.* at 1098.

asking for those documents. Thus, unlike in *Oliver*, in the instant case: (1) there is no evidence that the State violated discovery rules; (2) both chemists were subject to cross examination at trial; and (3) the underlying notes were not an issue of contention during trial. The adequacy of Trial Counsel's cross examination of the chemists is not at issue. Thus, *Oliver* is distinguishable from the instant case on the issue of receiving a continuance.

Additionally, the *Oliver* Court did not address any issues in the context of a Rule 61 Motion. Rather, the issue in *Oliver* concerns the adequacy of a remedy for a discovery violation of Superior Court Criminal Rule 16.[26] Therefore, *Oliver's* holdings do not control the instant motion before the Court.

Defendant contends a reasonably competent attorney would have requested the litigation packets after submitting the original discovery request. However, the defense trial strategy revolved around demonstrating Defendant was not associated with the drugs—that Defendant was in the wrong place at the wrong time.

The Court finds that Trial Counsel was not deficient by not asking for the litigation packets after receiving the final reports. Trial Counsel's discovery requests asked that reports provided by the State "include all preliminary notes made by the examiner in connection with the scientific examination . . . ." Trial Counsel is not required to ask again for materials already requested in the

---

[26] *Id.* at 1100.

discovery process. Nor is Trial Counsel required to make a request simply to obtain more time, or to create an appellate issue.

The Court finds that had Trial Counsel requested the trial packet, there was not a reasonable probability that the outcome of the trial would have been different. It was not likely that Defendant would have obtained an opposing expert to attempt to contradict the conclusion that the drugs were heroin. It was not reasonably likely the final reports could have been refuted to a degree that would have meaningfully contradicted the reports' conclusion that the confiscated drugs were heroin. Defendant suffered no actual prejudice.

### *Claim IV: Drug Dealing Expert*

Defendant contends Trial Counsel was deficient for failing to raise meritorious arguments that: (1) the testimony of the State's drug dealing expert exceeded the scope of the State's witness disclosure; and (2) violated Rule 403. The State's drug dealing expert testified regarding the distinction between drug dealers and drug users. Trial Counsel objected to this line of questioning as outside the scope of the disclosed testimony. The Court found this line of questioning to be standard drug dealing expert testimony. The drug dealing expert concluded that in his expert opinion, Defendant was engaged in drug dealing. The drug dealing expert made no conclusion as to Dunfee.

The Court finds Trial Counsel was not deficient in raising his objection to the expert testimony. Trial Counsel raised an objection, and it was unsuccessful. Trial Counsel continued an extensive cross examination of the State's expert witness. Trial Counsel is not required to make every possible argument. Furthermore, Defendant cannot demonstrate that the outcome of the trial would have been different had Trial Counsel raised further objection to the expert witness testimony.

### *Claim V: Meeting with Defendant—Hearsay*

Defendant contends Trial Counsel was ineffective for failure to substantively meet with Defendant to prepare him to testify. Specifically, Defendant contends that had Trial Counsel meaningfully met with Defendant prior to Defendant testifying: (1) Trial Counsel would have been able to anticipate and respond to a hearsay objection regarding the firearm at issue; and (2) Trial Counsel would have been able to prevent the admission of Defendant's prior convictions under Delaware Uniform Rules of Evidence ("D.R.E.") 609.

Trial Counsel stated in his affidavit that: Defendant's "trial testimony was not reviewed at length" before taking the stand because Defendant would take the position—as he had previously—that he was not responsible for the drugs or

firearm.[27]  Trial Counsel conducted a thorough direct examination of Defendant to allow Defendant to share his version of the case.

As part of the direct examination, Defendant injected alleged hearsay regarding what he and Dunfee told one another concerning the firearm at issue. Defendant stated: "I've seen [the gun].  [Dunfee] showed it to me and was like, 'Look what I got.' I was like, 'You might want to get rid of that.'"[28]  The State objected on hearsay grounds.  Trial Counsel did not raise any hearsay exceptions or state that the statement was not hearsay.  The Court then issued a curative instruction.  Trial Counsel then elicited similar testimony from Defendant in the following exchange:

> Q: So you indicated that Mr. Dunfee had showed you this firearm in the past?
>
> A: Yes.
>
> Q: And that's the first you were ever aware of it?
>
> A: Yes.
>
> Q: And are you aware of where that gun was kept?  Do you have any knowledge of how it was kept?
>
> A: No, I really didn't care to know.[29]

---

[27] Trial Counsel's Aff. in Resp. to Rule 61 Mot., at ¶¶ 15, 19.
[28] Trial Tr., Jan. 8, 2018, at 128:5–8.
[29] *Id.* at 131:8–17.

Possession or control of a firearm was defined as follows in the jury instructions:

> Possession means actual possession and constructive possession. Actual possession means defendant knowingly had direct physical control over the firearm. Constructive possession means the firearm was within defendant's reasonable control. That is, in or about the defendant's person, premises, belongings or vehicle. In other words, defendant had constructive possession over the firearm if defendant had both the power and the intention at a given time to exercise control over the firearm, either directly or through another person. Possession may be sole or joint. If one person has actual or constructive possession of a thing, possession is sole. If two or more persons share active or constructive possession over a thing, possession is joint. Possession is proven if you find beyond a reasonable doubt that defendant had actual or constructive possession, either alone or jointly with others.[30]

Defendant contends that Trial Counsel should have claimed the alleged hearsay statements were not hearsay because they were not offered for the truth of the matter asserted. Even assuming these statements would have been admissible if Trial Counsel had claimed the testimony was not hearsay, it would not likely have made a difference to the outcome of the trial. Trial Counsel elicited testimony that was substantially similar to the alleged hearsay testimony immediately after the Court gave the curative instruction. In that subsequent

---

[30] Trial Tr., Jan. 9, 2018, 75:21–76:19.

testimony, Defendant denied knowledge of where and how the gun was kept.[31] Therefore, the jury had the opportunity to hear substantially similar admissible testimony immediately after the sustained hearsay objection.

Defendant argues that the alleged hearsay suggests Defendant wanted Dunfee to get rid of the firearm, which meant Defendant had no possessory or ownership interest in the firearm. Defendant contends this is a key difference between the alleged hearsay testimony and the subsequent testimony elicited by Trial Counsel. However, it is also reasonable the jury could have interpreted the alleged hearsay to mean Defendant was in a position of power to tell Dunfee what he should or should not do with the firearm—thus bolstering the State's constructive possession arguments for the PFBPP charge. The alleged hearsay statement could have been either helpful or detrimental to the Defendant's case, depending on how the statement was interpreted by the jury.

The Court finds it was harmless for Trial Counsel not to argue to admit the alleged hearsay, and instead move on and elicit similar testimony. The Court finds it was not reasonably likely that admission of the alleged hearsay testimony would have altered the outcome of the conviction. Defendant was not prejudiced by Trial Counsel's failed attempt to admit the alleged hearsay.

---

[31] *Id.*

### *Claim VI: Prior Convictions Under D.R.E. 609*

Defendant contends Trial Counsel was ineffective for failing to prevent the admission of his prior convictions under D.R.E. 609. D.R.E. 609 allows the admission of evidence, for the purpose of attacking the credibility of a witness, that the witness has been convicted of a previous crime. D.R.E. 609(a)–(b) states:

> **(a) General rule.** For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime must be admitted but only if the crime (1) constituted a felony under the law under which the witness was convicted, and the court determines that the probative value of admitting this evidence outweighs its prejudicial effect or (2) involved dishonesty or false statement, regardless of the punishment.
>
> **(b) Time limit.** Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. However, evidence of a conviction more than 10 years old, as calculated herein, is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use it so that the party has a fair opportunity to contest its use.

The Court conducted a hearing outside the presence of the jury concerning the admissibility of Defendant's prior convictions before Defendant decided to testify. The State sought to introduce multiple felony convictions within the previous ten years: (1) Burglary Second degree—a crime of dishonesty; (2)

PFDCF; (3) Conspiracy in the Second Degree; and (4) Maintaining a Vehicle.[32]

The State also sought to introduce multiple crimes of dishonesty that were not within the previous ten years: (1) Burglary Second; (2) Attempted Theft; (3) Felony Theft; (4) Receiving Stolen Property; and (5) Attempted Theft.[33] Trial Counsel successfully argued that the crimes of dishonesty not within the previous ten years should be inadmissible. Trial Counsel did not argue that any of the four felony convictions within the previous ten years should not be introduced.

The Court permitted the State to introduce the four felony convictions within the previous ten years during the State's cross examination of the Defendant because there was no objection to them. However, during the cross examination, when the State asked Defendant about his conviction for PFDCF, Trial Counsel objected.[34] Trial Counsel and the State then went to side bar. At sidebar, the following conversation took place:

> [TRIAL COUNSEL]: In regard to the firearm during a felony prior conviction, I think it's perhaps unfairly prejudicial to put that in.
>
> THE COURT: Why didn't you bring this up before?
>
> [TRIAL COUNSEL]: I did not anticipate that the State would go through each individual charge. I was under the impression they were simply going to go after the charges that impinged upon his propensity for truthfulness.

---

[32] Trial Tr. Jan. 8, 2018, 80:7–16.
[33] *Id.* at 80:17–22.
[34] *Id.* at 138:2–3.

In light of the firearm during felony charge with the current charges, I think there is a reasonable probability that the jury would misuse that in their assessment of those charges.

[THE STATE]: Your Honor, the State made very clear that we were going to talk about the four felony convictions within the ten years.

. . . .

THE COURT: All right. I think the State was very clear they were going to bring it up ahead of time; however, my ruling at the time would have been that I would have limited the State, under these circumstances, to say you were convicted of another felony, but I find that because this objection has already occurred after it's been mentioned, it's too late.
I am not going to do a curative instruction. I find that the defense has waived that specific objection. That's why I had the discussion outside the presence of the jury, but at this point, I'm going to have the State simply say: Were you convicted of another felony on this date?[35]

Upon being asked about the fourth felony, Defendant asked for clarification concerning the exact conviction. Trial Counsel stated that he had no objection to the state mentioning the PFBPP conviction again. The Court interjected, stating: "I think probably the better course is for you to show the defendant the record and see if it refreshes his recollection, see if he can answer that question yes or no."[36]

---

[35] *Id.* at 138:8–140:9.
[36] *Id.* at 141:8–12.

Thereafter, the State showed Defendant the record and the Defendant affirmed he did have another felony conviction.[37]

The Commissioner's Report concluded that Trial Counsel was not deficient, and that Defendant cannot meet his burden to show actual prejudice. The Commissioner's Report based its conclusions on: (1) Defendant meeting with Trial Counsel on numerous occasions to discuss his criminal record; (2) Defendant's awareness that the jury would hear about his prior convictions before he chose to testify; and (3) that the mention of Defendant's prior PFDCF conviction in the presence of the jury did not prejudice Defendant because he was not convicted of PFDCF in the instant case—rather, he was convicted of PFBPP.

While it is evident that Defendant made his decision to testify knowingly, intelligently, and voluntarily, a reasonably competent attorney would have argued Defendant's prior PFDCF conviction was unduly prejudicial during the hearing before the jury came into the courtroom. Defense counsel should be aware of the potential that their client may decide to testify at trial. As such, in preparation for trial, competent defense counsel should know their client's prior convictions, know which convictions the State can permissibly mention during cross examination under D.R.E. 609, and know which convictions defense counsel will argue are inadmissible.

---

[37] *Id.* at 141:16–23.

Upon learning that Defendant's desire to testify, Trial Counsel should have known which convictions he was going to argue were not admissible under D.R.E. 609's balancing test. When the Court gave Trial Counsel the opportunity to argue the admissibility of Defendant's prior convictions, Trial Counsel should have been prepared with an argument concerning the prejudice his client would suffer if the prior conviction for PFDCF were mentioned in front of the jury. Instead, Trial Counsel missed that opportunity and waited until the State mentioned the prior PFDCF conviction in front of the jury. Trial Counsel nearly let the PFDCF conviction in again, but the Court interjected.

At trial, after the sidebar concluded, Defendant's questioning continued:

> [THE STATE]: Mr. Tingle, and you have a fourth felony conviction also from 2009, correct?
>
> [DEFENDANT]: What is it?
>
> THE COURT: You'll have to answer yes or no to that question.
>
> [DEFENDANT]: Yes, I guess.
>
> THE COURT: I don't want you to answer yes to that question if you don't recall it.
>
> [DEFENDANT]: That's why I asked, ["]What was it?["]
>
> THE COURT: Don't say anything.
>
> [TRIAL COUNSEL]: Your Honor, in light of the defendant's request for clarification, there's no objection to the State clarifying its question at this point.

THE COURT: I think probably the better course is for you to show the defendant the record and see if it refreshes his recollection, see if he can answer that question yes or no.

[THE STATE]: May I approach?

THE COURT: Yes

[THE STATE]: Mr. Tingle, I am showing you a document that may refresh your recollection. I will point out to you what I'm speaking about.

[DEFENDANT]: Yes.

[THE STATE]: So you have another felony conviction from 2009, correct?

[DEFENDANT]: Yes.[38]

While the question the State ultimately asked Defendant did not specifically state Defendant's PFDCF conviction, the jury had heard the Defendant confirm on the stand that he was convicted of three previous crimes. Immediately thereafter, the State asked about Defendant's prior PFDCF conviction, to which Trial Counsel objected. Shortly thereafter, the State asked Defendant about a fourth conviction, to which the Defendant affirmatively answered he was convicted of committing. Because of this sequence of events, the jury became aware of Defendant's PFDCF conviction.

---

[38] *Id.* at 140:15–141:23.

25

The Court finds that Trial Counsel's representation was deficient. Because Trial Counsel failed to timely object to the introduction of Defendant's PFDCF conviction, the jury learned of his prior PFDCF conviction. Defendant's prior conviction was the same, or substantially similar to, Defendant's then current charges of PFDCF and PFBPP. A reasonably competent attorney would have made a timely objection and argument concerning the PFDCF conviction during the hearing before the jury entered the courtroom.[39] Both PFDCF and PFBPP are offenses involving a firearm. Knowledge of a prior conviction of PFDCF is likely to prejudice the jury in favor of convicting the Defendant of PFBPP and PFDCF. Therefore, the PFBCF conviction would have been inadmissible under the Court's D.R.E. 609 balancing test.[40]

Defendant was convicted of the PFBPP charge, but not the PFDCF charge at trial. The evidence demonstrating Defendant was guilty of the PFBPP charge was that: (1) Defendant testified to having seen the firearm at Dunfee's residence, where Police found it in an unlocked safe;[41] (2) Defendant was seen frequently coming and going from Dunfee's residence in the Audi;[42] (3) Defendant's

---

[39] The assumption that Trial Counsel did not think the State would mention each individual charge is unreasonable. The State previously had named each conviction it intended to mention in its cross examination.

[40] *Id.* at 139:19–22 ("[H]owever, my ruling at the time would have been that I would have limited the State, under these circumstances, to say you were convicted of another felony . . . .").

[41] Trial Tr., Jan. 8, 2018, at 131:8–17.

[42] Trial Tr., Jan. 5, 2018, at 42:20–43:6.

26

girlfriend lived at Dunfee's residence;[43] (4) Defendant's mother's Audi with drugs in the trunk was parked in Dunfee's garage;[44] (4) a drug dealing expert testified that drug dealers use firearms as a means of security;[45] and (5) Defendant had the financial means to obtain the firearm[46]—a rare and expensive .50 caliber Desert Eagle handgun.[47]

There was no evidence that Defendant actually possessed the firearm. Therefore, the State had to rely on a constructive possession theory to convict the Defendant of PFBPP at trial. The State presented evidence connecting the Defendant to Dunfee's residence where Police located the firearm. However, no evidence on the record definitively showed that Defendant—either alone or through Dunfee—"had both the power and the intention at a given time to exercise control over the firearm. . . ."[48]

Therefore, the jury was reasonably likely to take Defendant's credibility and character into consideration during deliberations concerning the PFBPP charge. Thus, the impact of the State having mentioned a prior PFDCF conviction was reasonably likely to have altered the outcome of the Defendant's PFBPP conviction at trial. While PFDCF and PFBPP are not the same charge, they are

---

[43] Trial Tr., Jan. 8, 2018, at 86:14–88:7.
[44] Trial Tr., Jan. 5, 2018, at 58:11–19, 66:1–9, 72:10–73:11.
[45] Trial Tr., Jan. 8, 2018, at 41:17–42:4.
[46] Trial Tr., Jan. 3, 2018, at 52:1–4.
[47] Trial Tr., Jan. 5, 2018, at 52:22–53:3.
[48] Trial Tr., Jan. 9, 2018, 76:6–10.

both charges of illicit conduct involving a firearm. The jury did not convict Defendant of the PFDCF in the instant case. However, mentioning the Defendant's previous PFDCF conviction was likely to have a prejudicial effect upon the jury when convicting the Defendant of PFBPP.

Therefore, the Court finds Trial Counsel's failure to timely object to the introduction of Defendant's prior PFDCF conviction was not harmless. Trial Counsel's failure to timely object was reasonably likely to have altered the jury's determination of Defendant's guilt on the PFBPP charge. Thus, Defendant suffered prejudice under *Strickland* as it pertains to the PFBPP charge at trial.

### *Claim VII: Client Relationship*

Defendant claims that he suffered prejudice by having Trial Counsel represent him after their relationship was irretrievably broken. As evidence of this, Defendant uses: (1) the fact that Defendant requested new counsel on the morning trial was to start; (2) the fact that Trial Counsel did not seek to admit Dunfee's affidavit; and (3) Trial Counsel's social media posts.

Defendant expressed dissatisfaction with Trial Counsel on the morning trial was to begin. Trial Counsel was unable to give definitive answers to Defendant regarding what might occur at trial. Trial Counsel explained that trial decisions are "dependent on what the evidence and testimony on record reveals."[49]

---

[49] Trial Tr., Jan. 3, 2018, at 19:21–22:11.

On direct appeal, Defendant claimed that the Superior Court erred by denying Defendant's request for a continuance to hire another lawyer.[50] The Delaware Supreme Court found no merit to Defendant's claims.[51] Defendant: (1) had "expressed no prior dissatisfaction with Trial Counsel until the day of trial;" (2) "had the opportunity to replace his privately retained counsel seven months before trial;" and (3) "a continuance would have unnecessarily delayed the trial."[52]

The fact that Trial Counsel refused to admit Dunfee's affidavit was a demonstration that Trial Counsel was representing Defendant to the best of his ability. In Trial Counsel's affidavit, he represented that the Dunfee affidavit directly contradicted Dunfee's previously recorded statement—Dunfee's affidavit contained testimony more favorable to Defendant than Dunfee's previously recorded statement.[53] While Dunfee's affidavit contained testimony more favorable to Defendant than Dunfee's previously recorded statement, Trial Counsel had serious concerns that offering the affidavit would be a violation of Delaware Lawyers' Rule of Professional Conduct 3.3(a)(3), which mandates that counsel not offer evidence that the lawyer knows to be false.[54] Trial Counsel claimed that attempting to admit the affidavit would have undermined Defendant's goal of

---

[50] *Tingle v. State*, 2019 WL 2079060, at *2 (Del. 2019).
[51] *Id.* at *3.
[52] *Id.*
[53] Trial Counsel's Aff. In Response to Rule 61 Mot., at ¶¶ 17–18.
[54] Trial Counsel's Supplemental Submission to the Court, dated April 20, 2022, at 1.

29

seeking a not guilty verdict on all counts.[55]  Trial Counsel also discussed Dunfee's affidavit with Defendant before trial.[56]  It appears Dunfee's affidavit would have been inadmissible hearsay.  It also appears that neither Dunfee's previously recorded statement, nor Dunfee's affidavit came in as evidence at trial.[57]  Dunfee was supposed to be tried the same day, but he did not show up to the courthouse.  Despite Defendant's disappointment that the Dunfee affidavit was not admitted, this does not demonstrate a complete breakdown of the attorney-client relationship.

Trial Counsel's social media posts during the course of trial, while concerning, do not demonstrate a breakdown in communication between Trial Counsel and defendant.  The posts demonstrate that Trial Counsel recognized his client's case was not strong due to the evidence the State had against him.  The posts were made to Trial Counsel's private social media page.[58]  The posts only were accessible to a limited audience.[59]  The posts did not contain specific details regarding the trial.[60]  Whether Trial Counsel's remarks merit extra-judicial discipline is not the subject of this motion.

---

[55] Trial Counsel's Aff. In Response to Rule 61 Mot., at ¶¶ 17–18.
[56] *Id.* at ¶ 18.
[57] Dunfee's recorded statement and affidavit were referenced during the Sentencing Hearing. Sentencing Tr., Sept. 21, 2018, at 15:21–17:21.
[58] Trial Counsel's Supplemental Submission to the Court, dated April 20, 2022, at 2.
[59] *Id.*
[60] *Id.*

The Court finds that Trial Counsel and Defendant's relationship was not so irretrievably broken that it rose to the level of prejudice to the Defendant under *Strickland*.

**CONCLUSION**

The Court finds that the Commissioner's Report, dated August 26, 2022, should be adopted as to Claims I–V, and VII for the reasons set forth therein. The Commissioner's findings are not clearly erroneous, are not contrary to law, and are not an abuse of discretion.[61] The Commissioner's Report is not adopted as to Claim VI.

**THEREFORE,** after careful and *de novo* review of the record in this action, the Court hereby **adopts in part the Commissioner's Report**. Defendant's Motion for Postconviction Relief is hereby **GRANTED as to Claim VI**. Defendant's Motion is hereby **DENIED** as to all other claims.

Defendant's PFBPP conviction his hereby **SET ASIDE** pursuant to Superior Court Criminal Rule 61(a).

**IT IS SO ORDERED.**

                    */s/ Mary M. Johnston*
                    The Honorable Mary M. Johnston

---

[61] Super. Ct. Crim. R. 62(a)(4)(iv).